IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PAMELA ROSELLA                                                      PLAINTIFF

v.                                                           CAUSE NO. 3:19-cv-875 CWR-FKB

CRC INSURANCE SERVICES, INC. *dba*
SOUTHERN CROSS UNDERWRITERS,
BRANCH BANK AND TRUST COMPANY,
SAM GARDNER and JOHN DOES 1 through 10                DEFENDANTS

COMPLAINT
(JURY TRIAL DEMANDED)

Pamela Rosella (hereinafter "Rosella" and/or "Plaintiff"), by and through counsel, files this Complaint against Defendants CRC Insurance Services, Inc. *dba* Southern Cross Underwriters; Branch Bank and Trust Company; Sam Gardner; and John Does 1 through 10, and in support thereof, states as follows:

1. Pamela Rosella is (and at all times relevant to the allegations of this Complaint has been) an adult resident citizen of Madison County, Mississippi. At all times pertinent to the allegations of the Complaint, as stated in more detail herein, Plaintiff– based on her age, was a member of a protected class under the ADEA.

2. CRC Insurance Services, Inc. *dba* Southern Cross Underwriters (hereinafter "SCU") is a corporation organized and existing under (and with its principal place of business located in) the state of Alabama. SCU can be served with process through its registered agent- CT Corporation System, 645 Lakeland Drive East Dr., Ste. 101, Flowood, MS 39232. At all times pertinent to the allegations of the Complaint, as stated in more detail herein, Defendant SCU was Plaintiff's employer within the meaning of the ADEA.

3.      Branch Bank and Trust Company (hereinafter "BB&T") is a business entity organized and existing under the laws of (and with its principal place of business located in) the state of North Carolina. BB&T can be served with process through its registered agent- CT Corporation System, 645 Lakeland Drive East Dr., Ste. 101, Flowood, MS 39232. At all times pertinent to the allegations of the Complaint, as stated in more detail herein, Defendant SCU was Plaintiff's employer within the meaning of the ADEA.

4.      Sam Gardner is an adult resident citizen of Madison County, Mississippi. He can be served with process at his residence address (104 Camden Vale, Madison, MS 39110) or place of employment (6311 Ridgewood Rd., #401, Jackson, MS 39211). At all times pertinent to the allegations of the Complaint, Defendant Gardner was acting in the course and scope of his employment with/as an agent/at the direction of Defendants SCU and BB&T, such that he was Plaintiff's employer within the meaning of the ADEA.

5.      Defendant John Does 1 through 10 are agents, representatives and/or persons acting at the direction of/in concert with Defendants who/that/which were involved in the discrimination/tortious conduct as set forth in this Complaint, the conduct of whom/which subjects them to individual liability under Federal law and/or the laws of the State of Mississippi; and/or are "alter egos" of the named Defendants; and/or are corporations, individuals or other entities that caused or contributed to Plaintiff's damages as set-forth herein.

6.      This case asserts claims under the Age Discrimination Act of 1967 (hereinafter "ADEA"), as codified, 42 U.S.C. §§ 621 *et seq.* At all times pertinent to the allegations of this Complaint, Defendants were private "employers" as defined under the ADEA, as each were engaged in an industry affecting interstate commerce and had twenty (20) (or more) employees for each working day in each of the twenty (20) or more calendar weeks preceding Plaintiff's

termination in 2019. (29 U.S.C. § 630(b))  Further, at all times pertinent to the allegations of the Complaint, Plaintiff was an "employee" of Defendants and a member of a protected class under the ADEA (29 U.S.C. § 631(a)), as she was over forty (40) years of age. (29 U.S.C. §630(b)). For all of these reasons,  this Court has Federal Question Jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3).

7. Pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental jurisdiction over any state law claims, as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. In addition, resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency and fairness to the parties.

8. Venue is proper in the Northern Division of the United States District Court for the Southern District of Mississippi, as Plaintiff's cause(s) of action arose within said District and Division (in that a substantial part of the acts and omissions giving rise to her claims–including, but not limited to, her employment and all job-related activities and termination, occurred there).

9. This Court has personal jurisdiction over the Defendants as (at all times pertinent to the allegations of the Complaint) they do/have done business in the State of Mississippi and violated laws, committed torts and/or breached contracts in whole or in part in the State of Mississippi. Defendants' contacts with the State of Mississippi were at all pertinent times systematic and continuous such that the exercise of jurisdiction comports with the notions of fair play and substantial justice.

10. Plaintiff filed a Complaint (against Defendants) with the EEOC  and was granted a right to sue letter dated September 4, 2019.

11. This action is filed within ninety (90) days of the EEOC's "Right to Sue" letter.

12. Plaintiff has complied with all conditions precedent/exhausted all administrative remedies necessary for this filing of this suit.

13. At all times pertinent to the allegations of the Complaint, Defendants were aware of Plaintiff's age and that she was a member of a protected class under the ADEA. Likewise, at all times pertinent to the allegations of the Complaint, Defendants were aware that terminating Plaintiff based on her age was illegal under the ADEA.

## FACTS

14. On October 21, 2001, Plaintiff Pamela Rosella began working for Defendant SCU as a Senior Broker at its 6311 Ridgewood Road location in Jackson, Mississippi. At the time of her hiring and at all times thereafter, Defendant SCU was a wholly-owned subsidiary of Defendant BB&T, which at all times dictated the business practices/policies/procedures (both official/unofficial, written/unwritten) of SCU (including, but not limited to, the treatment/hiring/firing of employees based on age). In 2014, Plaintiff was promoted to supervisory position with Defendants.

15. For over seventeen (17) years, Plaintiff worked as a trusted, productive employee, contributing to Defendants' financial success, with (for a large portion of her tenure) direct supervisory responsibilities over at least three (3) other employees. At all times pertinent to the allegations of the Complaint, Defendant Gardner was Plaintiff's direct supervisor with authority over decisions regarding her employment (including, but not limited to, compensation, discipline and termination).

16. In February 2019, Defendant Gardner approached Plaintiff and asked her about her "plans for retirement". Plaintiff had no plan to leave Defendants' employment (much less

retire) and advised Defendant Gardner of such. Around this same time, Defendant Gardner made the same inquiry of three (3) other employees of an age that made each a member of the protected class for purposes of age discrimination under the ADEA.

17. Between February and July of 2019, Defendants– with the assistance of Plaintiff's eventual replacement (a person younger that the age-protected class defined by the ADEA), began to manufacture reasons for adverse employment action, all of which amounted to pretext designed to disguise the actual age-based reasons for Plaintiff's eventual, planned termination.

18. On July 12, 2019, Defendants, through their agent Defendant Gardner, terminated Plaintiff. Plaintiff's termination was based on her age in violation of the ADEA. To the extent Defendants offered a reason for Plaintiff's termination other than her age, those reasons were (and are) pretext and offered in attempt to insulate Defendants from liability for conduct that they either knew to be (or displayed reckless disregard as to whether it was) illegal.

19. Plaintiff's termination has damaged her reputation and/or has otherwise impacted her career such that she has been unable to obtain employment substantially similar in status, responsibilit(y)(ies) and/or compensation. All of this has resulted in economic damages including, but not limited to, loss of access to the job market; lost back pay; front pay; and future pay, as well as loss of fringe benefits including healthcare, retirement and all other benefits that Plaintiff would have received but-for her termination.

## WRONGFUL TERMINATION UNDER THE ADEA

20. Plaintiff reasserts and incorporates the allegations made in paragraphs 1 through 19 of the Complaint.

21. At the time of her discharge on July 12, 2019, Plaintiff was sixty-one (61) years old (and thus, a member of a protected class) and qualified for the position she held. Defendants

knew Plaintiff's age; knew her to be a member of a protected class under the ADEA; discharged her because of her age; and also replaced her with a person under the age of forty (40)(who was not a member of a protected class under the ADEA).

22. Plaintiff's termination was based on her age and was part of a concerted effort by Defendants to target (an) older employee(s) because of her/their age and tenure and commensurate greater compensation and ultimate benefit-related cost(s). All of this is evidenced by Defendant Gardner's age-related questioning of Plaintiff regarding her retirement plans, said questioning having been (1) related to Plaintiff's employment (status); (2) made proximate in time to Plaintiff's termination; and (3) by Defendant Gardner as a person with authority over Plaintiff's employment status.

23. Plaintiff's termination has damaged her reputation and/or has otherwise impacted her career such that she has lost access to the job market and been unable to obtain employment substantially similar in status, responsibilit(y)(ies) and/or compensation. All of this has resulted in economic damages including, but not limited to, loss of access to the job market; lost back pay, front pay and future pay; as well as loss of fringe benefits including healthcare, retirement and all other benefits that Plaintiff would have received but-for her termination.

**TORTIOUS INTERFERENCE - DEFENDANT GARDNER**

24. Plaintiff reasserts and incorporates the allegations made in paragraphs 1 through 23 of the Complaint.

25. At all times pertinent to the allegations of the Complaint, Defendant Gardner, as Plaintiff's direct supervisor, was aware of the details of her business relationship with Defendants. His actions in orchestrating the termination of (and ultimately terminating) Plaintiff were intentional and wilful; calculated to cause damage to Plaintiff's lawful business; and done

with the unlawful purpose of causing damage and loss, without right or justifiable cause. Further, actual damage and loss resulted from his conduct.

26. For all of these reasons, Defendant Gardner tortiously interfered with Plaintiff's employment and is liable for all damages proximately caused by that conduct.

## INTENTIONAL CONDUCT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS and OUTRAGE

27. Plaintiff incorporates and reasserts the allegations of Paragraphs 1 through 26 of the Complaint.

28. Defendants' conduct as alleged in this Complaint including, but not limited to, as set-forth *supra* was/were intentional and reckless; extend(ed)(s) beyond mere insults, indignities, threats, annoyances, petty oppressions and other trivialities; and would cause an average member of the community to arouse as a resentment against Defendants and lead them to exclaim that the conduct in question was so outrageous in character and so extreme in degree, as to go beyond the bounds of all decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

29. As a proximate and foreseeable result, Plaintiff experienced damage to reputation and great, extreme emotional distress and other economic damages to be proven at a trial of this matter, for all of which Plaintiff seeks compensation in the form of all damages available under State and Federal law.

## DAMAGES

30. Plaintiff incorporates and reasserts the allegations of Paragraphs 1 through 29 of the Complaint.

31. As a direct and proximate result of the Defendants, and each of their actions and conduct, Plaintiff has suffered, and continues to suffer, substantial actual, economic and compensatory damages, including but not limited to economic losses, such as attorney's fees incurred in bringing this action; severe emotional distress and mental anguish; anxiety; worry; and other damages to be shown at

the trial of this matter (including, but not limited to, loss of wages and benefits, damage to reputation, etc.), for all of which Plaintiff is entitled to be compensated by these Defendants, jointly and severally, in an amount to be determined by a Jury at the trial of this matter.

32. The actions of Defendants, and each of them, as set forth in the preceding paragraphs, were so outrageous and/or malicious as to shock the conscious of a reasonable person; proximately caused Plaintiff to suffer, and to continue to suffer, severe anxiety and emotional distress and was conduct Defendants knew, or should have known, would cause Plaintiff to suffer severe emotional distress. As a result of their outrageous conduct, Defendants, and each of them, are liable to Plaintiff for an amount of money sufficient to compensate her for her severe emotional distress, as well as punitive damages in amount sufficient to punish Defendants for their misconduct and deter Defendants, and others similarly situated, from engaging in similar behavior in the future.

33. The conduct of the Defendants, and each of them, as referenced in the preceding paragraphs, was done with actual malice and/or constituted actual fraud, making the Defendants, and each of them, liable to Plaintiff for punitive damages, under Miss. Code Ann. § 11-1-65 and/or under the common law, in an amount to be determined by a Jury, but in an amount sufficient to punish Defendants for their misconduct, and to deter these Defendants, and others similarly situated, from engaging in such acts and conduct in the future.

34. In the alternative, should the evidence so indicate that Defendants' conduct fails to rise above the level of ordinary negligence, Plaintiffs seeks all damages allowed under the law for said conduct.

## RESERVATION OF CLAIMS

35. As a result of Defendants' conduct as outlined herein, Plaintiff is without knowledge or information sufficient to form a belief as to whether other claims and damages may exist. However, contingent on the facts revealed by investigation and discovery, Plaintiff expressly reserves her right to raise any additional claims and assert any additional grounds as may be appropriate.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands a trial by jury and judgment from and against Defendants, including John Does, jointly and severally for actual, compensatory, consequential, incidental, extra-contractual and/or punitive damages, as well as costs and attorney's fees, and any other available relief in excess of the Court's jurisdictional minimum, exclusive of interest and costs. Plaintiff also asks this Court for any and all other relief it may deem appropriate under the circumstances.

                                    Respectfully submitted,
                                    **PAMELA ROSELLA**

BY:  /s   Timothy D. Moore
        Timothy D. Moore (MSB #10494)
        Moore & Ogletree, PLLC
        1640 Lelia Drive, Ste, 105
        Jackson, MS 39216
        601.988.4590 TEL
        601.300.3131 FAX
        tmoore@tdmoorelaw.net

OF COUNSEL:
Robert B. Ogletree
Moore & Ogletree, PLLC
1640 Lelia Drive, Ste, 105
Jackson, MS 39216
601.988.4590 TEL
601.300.3131 FAX
tmoore@tdmoorelaw.net